NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 81

No. 2016-030

| Kevin Ward | Supreme Court |
| --- | --- |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| Renee LaRue | June Term, 2016 |

Barry D. Peterson, Acting Superior J., Specially Assigned

Norman R. Blais, Burlington, for Plaintiff-Appellee.

Joanna K. Watts of Law Office of Joanna K. Watts PLC, Shelburne, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **EATON, J.**  Mother appeals from the trial court's imposition of sanctions against her and its denial of her request that Vermont relinquish jurisdiction over this case to Virginia. She asserts that the evidence does not support the imposition of sanctions and that the court erred in evaluating her jurisdictional request. We affirm.

¶ 2.    To place the court's ruling in context, we must recount the procedural history of this case. The parties are the parents of a daughter, born in August 2004. The parties were living in Vermont and obtained a final parentage order in December 2012. Mother was awarded sole legal and physical parental rights and responsibilities, and father was awarded significant parent-child contact (PCC). In October 2013, the court granted father's motion to enforce his parent-child contact. The court warned mother that if she withheld or denied father's right to contact in

the future, it would seriously consider modifying parental rights and responsibilities. The court was persuaded that mother had no ability or disposition to foster a positive relationship and frequent and continuing contact with father, and that it was in the child's best interests to have frequent and continuing contact with him. The court reiterated that, pursuant to existing orders, father had the right to full access to the child's medical, dental, law enforcement, and school records.

¶ 3. In August 2014, mother and daughter moved to Virginia. Father continues to live in Vermont. The parties stipulated to a PCC order in early December 2014, which the court approved in early January 2015. By agreement, father was to be provided with PCC during Christmas 2014 and during the early spring and summer of 2015. The Christmas visitation did not occur. In April 2015, father moved to enforce the PCC order. Father asserted that he had been unable to schedule a spring visit because mother refused to tell him where the child lived and which school she attended. Father asked the court to order mother to supply him with the name and address of the child's school and her health care providers. He also sought an order requiring mother to cooperate with him in setting up summer visitation. In June 2015, the court issued an order stating that the summer visit would occur between June 28 and August 28, 2015. The court explained that if the child, who had been homeschooled, was to be enrolled in a "brick-and-mortar" school in the fall of 2015, father would have to return the child on the Sunday before the school year began. For this provision to apply, mother was required to file an affidavit attesting to the fact of enrollment and stating the first and last day of classes.

¶ 4. On July 2, 2015, father filed an emergency motion for sanctions and for enforcement. He indicated that he had purchased an airplane ticket for the child's summer visit but had been informed that the child refused to board the flight. Father asked the court to order mother to deliver the child as soon as possible, and to impose sanctions. Following a hearing, mother agreed to drive the child to Vermont and father withdrew his motions. In late July 2015,

2

mother filed an affidavit stating that the child was enrolled in school, which would begin on August 19, 2015. The court subsequently ordered father to return the child to mother on August 16, 2015. Approximately one month later, father moved for an order compelling mother to disclose the name and address of the child's school as mother refused to provide him this information. Mother did not deny father's assertion, but indicated that she had provided father with information about the child's academic progress, her report cards, and general information about her educational development.

¶ 5. The court granted father's request in October 2015. It found no reason why father should be required to obtain information concerning the child's education exclusively from mother, and it reiterated that father had the right to communicate directly with the child's school to obtain such information. The court ordered mother to sign a release within ten days that authorized father's communication with the school and its personnel, and authorized the release to father of all information concerning the child. One month later, father filed another motion for sanctions and enforcement, asserting that mother had not signed the release as ordered by the court.

¶ 6. Shortly before father's filing, mother asked the court to relinquish jurisdiction over this case to the Virginia courts. Mother argued that she and the child no longer had a significant connection to Vermont and that the "center of gravity regarding the child's care, protection, schooling and personal relationships center fully in Virginia." Mother acknowledged that the parties had an "active history" in the Vermont family court regarding PCC matters, but asserted that it was "reasonably probable that the significant majority of disputes have already arisen and been addressed." Even if there were further disputes, mother stated Vermont was an inconvenient forum for her. Mother had apparently tried to register and modify a Vermont order in the Virginia courts prior to this filing. She attached to her motion an order from a Virginia

court, which indicated that it could not modify a Vermont order unless Vermont declined continuing jurisdiction.

¶ 7. The court considered both parties' motions at an evidentiary hearing in December 2015. The court noted at the outset of the hearing that the matter had been scheduled as a status conference. However, both attorneys stated their understanding that they were there for an evidentiary hearing on the pending motions. Both parents testified at the hearing, and the testimony focused on whether mother had provided father with the information required by the prior court order. Mother's attorney also presented a brief argument in support of transferring the case to Virginia, but he offered no evidence beyond mother's testimony. Mother's attorney indicated that he had briefed the issue and asked the court to take the motion to transfer under advisement.

¶ 8. Following the hearing, the court issued the order challenged in this appeal. Based on a review of the admissible evidence presented, including the parties' testimony and a review of the file, the court found that mother did not provide father with a copy of the child's school records or identify the school that she was attending, despite father's repeated requests. Mother similarly did not sign a release for the child's school records as required by the court's October 7, 2015 entry order. The court rejected mother's testimony to the contrary as not credible. It determined that father had incurred unnecessary attorney's fees of at least $500 to address these enforcement issues, and thus ordered mother to pay this sum to father's attorney.

¶ 9. The court also denied mother's request to decline continuing jurisdiction, finding that father continued to live in Vermont and the original parentage order and all subsequent orders had been issued by Vermont. Since mother's unilateral decision to relocate to Virginia fourteen months earlier, the only contested issues presented to the court had been issues directly related to father's rights to PCC, access to his daughter's school records, and the identity and address of her school, all as a result of mother's failure to comply with the court's orders and

4

Vermont law. The court found no compelling reason that would justify relinquishment of jurisdiction in this case. It concluded that Vermont remained the more appropriate jurisdiction to address father's PCC rights with his daughter. The court thus denied mother's motion. This appeal followed.

¶ 10. Regarding the imposition of sanctions against her, mother contends that she timely complied with all court orders, that the parties were equally at fault with respect to any communication problems, and that father had not had any difficulties in the past in obtaining information from her. Mother also asserts that father did not engage in mediation before filing his motion, which she suggests was required under the final parentage order. As support for her position, mother cites to an affidavit that she apparently filed with the trial court and to her own trial testimony.

¶ 11. In her affidavit, dated November 21, 2015, mother asserted that in September 2015, she had faxed information about the child's school work and a school newsletter to father. She also stated that she had faxed a release for father to the school on October 16, 2015.[1] Mother testified at the hearing that her plans to enroll the parties' daughter in a "brick-and-mortar" school fell through and the child was participating in an online school. Mother claimed she informed father of this in writing. Mother also testified that she sent father the school newsletter. Father testified, by contrast, that mother had not provided him with this information. Father stated that he requested the school information from mother through his attorney but mother did not respond. Father testified that he had to file a court action to find out where the child was attending school and to get her records.

¶ 12. As reflected above, the trial court found father credible and it rejected mother's position. Father's testimony shows that mother's refusal to comply with the order was willful.

---

[1] This affidavit was apparently in the trial court file, but it was not admitted into evidence at the hearing. Mother never submitted the faxes that she claimed to have sent.

5

While mother argues that the court should have found her credible, it is the exclusive "province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) (citation omitted). We do not reweigh the evidence on appeal. Finally, we reject mother's suggestion that, under the parentage order, father was obligated to engage in mediation before filing his motion to enforce. The October 2015 decision at issue imposed no mediation requirement. Instead, the court specifically directed mother to comply with its order within ten days. The evidence supports the court's finding that mother failed to comply with this requirement, and it did not err in imposing sanctions against mother under Vermont Rule for Family Proceedings 16(c)(3).

¶ 13. Concerning the court's decision on mother's motion to transfer jurisdiction, mother asserts that the court did not allow the parties to submit evidence because the matter was set for a "status conference." She further contends that Virginia is now the child's "home state" under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 15 V.S.A. §§ 1061-1096, and that the child's connection with Vermont has become tenuous. According to mother, Vermont is an inconvenient forum under 15 V.S.A. § 1077, and the court failed to consider the statutory factors or identify the basis for its decision to the contrary.

¶ 14. We find these arguments to be without merit. First, the record does not support mother's suggestion that she was unprepared or otherwise prohibited from presenting evidence at the hearing. No party objected to going forward with an evidentiary hearing. To the contrary, both parties expected the evidentiary hearing to occur and expressly asked the court to go forward with such hearing. Mother had ample opportunity to present evidence in support of the motion. Her attorney indicated to the court, however, that he intended to rely on his brief.

¶ 15. Mother presented no evidence in support of her request to transfer jurisdiction to Virginia, and the court did not err in denying her motion. Mother asserted in her brief that because she and the child now live in Virginia, Vermont no longer has continuing jurisdiction

over this matter. At oral argument mother abandoned this argument. Because the issue of continuing jurisdiction often arises, we will address it briefly despite mother's concession that Vermont has continuing jurisdiction.

¶ 16. Mother's arguments implicate two distinct provisions of the UCCJEA, 15 V.S.A. § 1072, which governs relinquishment of jurisdiction by the court that makes an initial custody determination and id. § 1077, which involves a decision by a Vermont court that Vermont has become an inconvenient forum. As set forth below, the trial court did not err in declining to relinquish jurisdiction under either provision.

¶ 17. The UCCJEA became effective on July 1, 2011, see id. § 1096, and it replaced the Uniform Child Custody Jurisdiction Act (UCCJA). One of the key issues that the UCCJEA sought to clarify from prior law was when the state that clearly had home state jurisdiction for the initial custody determination ceases to have jurisdiction, and whether the fact of a new home state ends the initial home state's jurisdiction. As the Committee Notes to the UCCJEA explain:

> **3. Exclusive continuing jurisdiction for the State that entered the decree.** The failure of the UCCJA to clearly enunciate that the decree-granting State retains exclusive continuing jurisdiction to modify a decree has resulted in two major problems. First, different interpretations of the UCCJA on continuing jurisdiction have produced conflicting custody decrees. States also have different interpretations as to how long continuing jurisdiction lasts. Some courts have held that modification jurisdiction continues until the last contestant leaves the State, regardless of how many years the child has lived outside the State or how tenuous the child's connections to the State have become. Other courts have held that continuing modification jurisdiction ends as soon as the child has established a new home State, regardless of how significant the child's connections to the decree State remain. Still other States distinguish between custody orders and visitation orders. This divergence of views leads to simultaneous proceedings and conflicting custody orders.
>
> The second problem arises when it is necessary to determine whether the State with continuing jurisdiction has relinquished it. There should be a clear basis to determine when that court has relinquished jurisdiction. The UCCJA provided no guidance on this issue. The ambiguity regarding whether a court has declined

7

> jurisdiction can result in one court improperly exercising jurisdiction because it erroneously believes that the other court has declined jurisdiction. This caused simultaneous proceedings and conflicting custody orders. In addition, some courts have declined jurisdiction after only informal contact between courts with no opportunity for the parties to be heard. This raised significant due process concerns. The UCCJEA addresses these issues in Sections 110, 202, and 206.

UCCJEA (1997), Prefatory Note. To remedy these issues, the UCCJEA "prioritizes home state jurisdiction in initial custody determinations," and it "clearly enunciates that the original decree state retains exclusive continuing jurisdiction over its custody orders." Brandt v. Brandt, 2012 CO 3, ¶ 23, 268 P.3d 406 (citing 9 West's U. Laws Ann. (1999) UCCJEA, Pref. Note, 650-52).

¶ 18. Thus, under the UCCJEA, a Vermont court has jurisdiction to make an initial child custody order where Vermont is the home state of the child on the date of the commencement of the proceeding. 15 V.S.A. § 1071(a)(1). The term "home state" is defined as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." Id. § 1061(7). When a Vermont court has made an initial child custody determination, it "has exclusive, continuing jurisdiction over the determination" until "a Vermont court determines that neither the child nor the child and one parent . . . have a significant connection with Vermont, and that substantial evidence is no longer available in Vermont concerning the child's care, protection, training, and personal relationships," or until a court determines that the child and both parents, or any person acting as a parent, "do not currently reside in Vermont." 15 V.S.A. § 1072(a)(1), (2). The law is clear "that only a court of the issuing state can decide that it has lost jurisdiction due to erosion of a 'significant connection' between the child and the state." Brandt, 2012 CO 3, ¶ 26 (citation omitted) (emphasis added). This is designed to "ensure that parents do not have an incentive to take their child out-of-state in order to re-litigate the issue of custody." Id. ¶ 27 (citation omitted).

¶ 19. When this parentage action commenced in 2011, all parties were Vermont residents, and the child had lived in Vermont "for at least six consecutive months immediately before the commencement of a child custody proceeding." 15 V.S.A. § 1061(7). Given that Vermont had jurisdiction to make the initial child custody determination, Vermont has "exclusive, continuing jurisdiction over the determination until . . . a Vermont court determines that neither the child nor the child and one parent . . . have a significant connection with Vermont, and that substantial evidence is no longer available in Vermont concerning the child's care, protection, training or personal relationships." Id. § 1072(a)(1).

¶ 20. In this case, the trial court was well within its discretion in declining to make such a determination, as mother now agrees. The court described the pending motion as part of an ongoing course of post-judgment litigation that began before mother and child relocated from Vermont. It noted that the central issues in the post-judgment litigation involved father's access to information about the child and his parent-child contact, and that father remained in Vermont. Given the court's analysis, its determination that Vermont retains continuing, exclusive jurisdiction was within its discretion. The proceedings here unfolded just as contemplated by the UCCJEA: the State of Virginia declined to rule on a motion to modify that mother filed in that state, recognizing that Vermont had exclusive continuing jurisdiction over this matter.

¶ 21. We thus turn to the second UCCJEA provision implicated by mother's arguments, 15 V.S.A. § 1077(a). Section 1077(a) provides that "A Vermont court which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances, and that a court of another state is a more appropriate forum." The statute further states that "[b]efore determining whether it is an inconvenient forum, a Vermont court shall consider whether it is appropriate for a court of another state to exercise jurisdiction." Id. § 1077(b). It continues:

9

> For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including: (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (2) the length of time the child has resided outside Vermont; (3) the distance between the Vermont court and the court in the state that would assume jurisdiction; (4) the relative financial circumstances of the parties; (5) any agreement of the parties as to which state should assume jurisdiction; (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child; (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

Id.

¶ 22. To the extent that mother argued that Vermont was an inconvenient forum under § 1077 below, she failed to present any evidence to support her claim, aside from the fact that she now lives in Virginia. While mother complains that the court made inadequate findings on the inconvenient forum issue, the absence of findings is justified by the absence of evidence upon which to make them. The only evidence that even touches on one of the factors, "domestic abuse," is mother's statement, when questioned by the court as to why she had not brought the child with her to Vermont to see father, that the child had returned from visits "with bruises that have been documented by law enforcement." Father testified that mother had filed two relief-from-abuse actions against him, and both were heard by a judge and dismissed. Father also testified that he had never been criminally charged with abusing mother. Mother did not establish that domestic violence had occurred, or show that she or the child needed protection from father, or that Virginia was better suited than Vermont to address these unproven claims of abuse.

¶ 23. In any event, the evidence that was presented plainly supports the court's decision to deny mother's request. As the court explained, Vermont has issued numerous orders since mother relocated, all of which stemmed from mother's failure to comply with existing orders.

There have been no disputes about mother's ability to exercise her parental rights. Given mother's behavior, father had to resort to court action to ensure his ability to exercise PCC, to have access to the child's records, and information about her school. Father resides in Vermont, and evidence concerning these issues is easily accessible in Vermont. Vermont courts have decided the issues expeditiously. The Vermont courts are also familiar with the facts and issues in these proceedings. This is important given mother's ongoing behavior and the fact that mother was previously warned that her continued interference with father's rights may trigger a change in custody. See, e.g., Miller-Jenkins v. Miller-Jenkins, 2010 VT 98, ¶ 25, 189 Vt. 518, 12 A.3d 768 (recognizing that children thrive with love and support of both parents, and "[o]ne parent's attempts to hamper the other's parent-child relationship therefore typically demonstrates a lack of regard for the child's best interests and suggests that a transfer of custody may well be in the child's best interests"); Sundstrom v. Sundstrom, 2004 VT 106, ¶ 38, 177 Vt. 577, 865 A.2d 358 (mem.) (stating that "obstruction of visitation and attempts at parental alienation are not in a child's best interests, and they may form the basis for a change in custody," and citing cases so holding). Mother did not present any evidence about the parties' respective financial circumstances, but even if she had, that would not change the result given the factors above. The court did not err in denying mother's motion to transfer jurisdiction over these proceedings to Virginia.[2]

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

[2] The court indicated that it found no "compelling reason" why Vermont should relinquish jurisdiction. While a compelling reason to relinquish jurisdiction is not required, it is clear the court felt jurisdiction should continue in Vermont based upon the history it recounted in support of its decision not to relinquish jurisdiction.