NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 63

No. 2016-420

| | |
|---|---|
| Laurie Pierce | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Family Division |
| | |
| Josh Slate | June Term, 2017 |

John W. Valente, J.

Cristina Mansfield of Mansfield Law, LLC, Manchester Center, for Plaintiff-Appellant.

Brian K. Marthage, Bennington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **CARROLL, J.**   Mother appeals from the trial court's dismissal of her parentage action under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as well as its denial of her motion to reconsider. Mother essentially argues that Vermont, not Virginia, should assert jurisdiction over this child custody case. We affirm.[1]

¶ 2.    As set forth in greater detail below, mother and father are the parents of a child born in Vermont in June 2016. The child also lived with parents for a time in Virginia. Father initiated child custody proceedings in Virginia in August 2016 and was granted custody of the child.

---

[1] Father moves to dismiss mother's appeal, arguing that this case is moot because mother no longer lives in Vermont. Given the possible existence of a factual dispute on this issue, we deny father's motion and address the case on the merits.

Mother appealed that decision within the Virginia court system.  Mother then filed a parentage action in Vermont.  Following a joint hearing before Virginia and Vermont courts, the Virginia court retained jurisdiction over the custody case, and the Vermont court dismissed the parentage action.

## I. UCCJEA

¶ 3.    To place mother's arguments in context, we begin with an overview of the UCCJEA, codified at 15 V.S.A. §§ 1061-1096.  As set forth below, the UCCJEA "prioritizes home state jurisdiction in initial custody determinations," and "clearly enunciates that the original decree state retains exclusive continuing jurisdiction over its custody orders."  Ward v. LaRue, 2016 VT 81, ¶ 17, __ Vt. __, 150 A.3d 631 (quotation omitted).  Where a child is less than six months of age, "home state" "means the state in which the child lived from birth" with a parent or a person acting as a parent.  15 V.S.A. § 1061(7) (indicating that "[a] period of temporary absence of any of the mentioned persons is part of the period").  A child might have no "home state."  See In re A.W., 2014 VT 32, ¶ 20, 196 Vt. 228, 94 A.3d 1161 (concluding that child had no "home state" at age of three weeks where she was born in New York but moved to Vermont at one week old with parent who intended to reside there; child had not "lived from birth" in either New York or Vermont); see also In re Cifarelli, 158 Vt. 249, 253-54, 611 A.2d 394, 396-97(1992) (concluding under same definition in predecessor statute that child who was less than six months old had "no home state" because she had neither lived consecutively in one state for six months "[n]or had she lived in any one state 'from birth' to the commencement of proceedings").

¶ 4.    Mother relies heavily on 15 V.S.A. § 1071(a), which concerns "[i]nitial child custody jurisdiction."  Section 1071 provides, with an exception not relevant here, that:

> (a) . . . a Vermont court has jurisdiction to make an <u>initial</u> child custody determination only if:
>
> (1) Vermont is the home state of the child on the date of the commencement of the proceeding or was the home state of the child

2

within six months before the commencement of the proceeding and the child is absent from Vermont, but a parent or person acting as a parent continues to live in Vermont;

   (2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that Vermont is the more appropriate forum under section 1077 or 1078 of this title, and:

   (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with Vermont other than mere physical presence; and

   (B) substantial evidence is available in Vermont concerning the child's care, protection, training, and personal relationships;

   (3) All courts having jurisdiction under subdivision (1) or (2) of this subsection have declined to exercise jurisdiction on the grounds that a Vermont court is the more appropriate forum to determine the custody of the child under section 1077 or 1078 of this title; or

   (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3) of this subsection.

(Emphasis added.)   An " '[i]nitial determination' means the <u>first</u> child custody determination concerning a particular child."   <u>Id</u>. § 1061(8) (emphasis added).

¶ 5.    If a Vermont court makes an initial child custody determination, that court:

(a) . . . has exclusive, continuing jurisdiction over the determination until:

   (1) a Vermont court determines that neither the child nor the child and one parent nor the child and a person acting as a parent have a significant connection with Vermont, and that substantial evidence is no longer available in Vermont concerning the child's care, protection, training, and personal relationships; or

   (2) a Vermont court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not currently reside in Vermont.

<u>Id</u>. § 1072; see also Editors' Notes, Uniform Child Custody Jurisdiction & Enforcement Act § 202 (1997) [hereinafter UCCJEA Editors' Notes] ("The continuing jurisdiction of the original decree State is exclusive," and "[i]t continues until one of two events [recited above] occurs.").

¶ 6.     The UCCJEA also addresses "jurisdiction to modify determination," 15 V.S.A. § 1073, which complements the section quoted above.  See UCCJEA Editors' Notes § 203. Section 1073 provides, with an exception not relevant here, that:

> [A] Vermont court may not modify a child custody determination made by a court of another state unless a Vermont court has jurisdiction to make an initial determination under subdivision 1071(a)(1) or (2) of this title <u>and</u>:
>
> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 1072 of this title or that a Vermont court would be a more convenient forum under section 1077 of this title; or
>
> (2) a Vermont court or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not currently reside in the other state.

(Emphasis added.)

¶ 7.     "Simultaneous proceedings" are addressed in § 1076(a), which states, with an exception not relevant here, that:

> (a) . . . a Vermont court may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a Vermont court is a more convenient forum under section 1077 of this title.

" 'Commencement' means the filing of the first pleading in a proceeding."  Id. § 1061(5).

¶ 8.     Section 1076(b) requires the Vermont court to examine information that the parties must provide concerning, among other things, whether a case has been filed in another state, and to determine if a child custody proceeding "has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter."  If so, the Vermont court must "stay its proceeding and communicate with the court of the other state."  Id.  Vermont must dismiss its

4

proceeding unless "the court of the state having jurisdiction substantially in accordance with this chapter" determines "that the Vermont court is a more appropriate forum." Id.

¶ 9. The UCCJEA Editors' Notes indicate that the section on simultaneous proceedings "represents the remnants of the simultaneous proceedings provision of the [Uniform Child Custody Jurisdiction Act (UCCJA)] § 6," the predecessor of the UCCJEA. UCCJEA Editors' Notes § 206. The notes recognize that various provisions in the UCCJEA, including the prioritization of "home state" jurisdiction, have minimized the "problem of simultaneous proceedings." Id. "If there is a home State," the notes explain, "there can be no exercise of significant connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings. If there is a State of exclusive, continuing jurisdiction, there cannot be another State with concurrent jurisdiction and, therefore, no simultaneous proceedings." Id. (recognizing that home state, as well as State with exclusive, continuing jurisdiction, could defer to another State, but "that decision is left entirely to the home State or the State with exclusive, continuing jurisdiction"). "Under this Act, the simultaneous proceedings problem will arise only when there is no home State, no State with exclusive, continuing jurisdiction and more than one significant connection State. For those cases, this section retains the 'first in time' rule of the UCCJA." Id. The "first in time" rule is discussed in greater detail below.

## II. Facts

¶ 10. With this legal framework in mind, we turn to the facts. As noted above, mother and father are the parents of a daughter, born on June 6, 2016 in Vermont. Parents did not have a long-term relationship. Mother lived in Vermont with her parents at the time of the child's birth. Father has been a Virginia resident at all relevant times. Shortly after the child's birth, parents began planning for mother to join father in Virginia with the child. Mother moved to Virginia on July 23, 2016. Mother signed a lease on an apartment in Virginia, which father co-signed for credit purposes. The parties anticipated that mother and child would live in the apartment. Mother

secured employment in Virginia and worked in Virginia. She transferred her address to Virginia with the United States Postal Service. Mother registered for and began using Women, Infants, and Children (WIC) benefits offered in Virginia. She transferred the child's medical records to Virginia. After about two weeks in Virginia, however, mother decided that she was not going to stay. Her decision was apparently triggered by father discussing a joint custody arrangement. Mother returned to Vermont with the child on August 9, 2016, and she testified that she intended to stay in Vermont. On August 10, 2016, father filed an action in Virginia, asking the court to determine custody and visitation. On September 9, 2016, the Virginia district court determined that Virginia was the child's "home state" and that it had jurisdiction over her. It awarded custody to father. Mother turned the child over to Father as ordered and appealed the Virginia order, raising a jurisdictional issue. Under Virginia law, a circuit court conducts a de novo review of the district court's custody ruling.

¶ 11. On September 12, 2016, mother also filed a parentage action in Vermont, asking the Vermont court to determine custody and visitation. The Vermont court issued an order indicating that a hearing would be scheduled to confer with the Virginia court on the jurisdictional issue. See 15 V.S.A. § 1068(a) ("A Vermont court may communicate with a court in another state concerning a proceeding arising under this chapter"); id. § 1076(b) (providing that court must communicate with court of other state "[i]f the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter"). On October 4, 2016, the Virginia court and a Vermont court held a joint hearing, with the Virginia court conducting a de novo review of the ruling below. The parties were present in Virginia with counsel, and counsel was also present in Vermont. Each party testified and submitted evidence.

¶ 12. At the close of the hearing, the Virginia court and the Vermont court conferred off the record. The Virginia court determined on the record that no state qualified as the child's home

6

state. It found, based on the evidence described above, that mother had moved to Virginia with the intention of making it her ongoing residence. It explained that mother had taken significant steps including accessing benefits and changing her mailing address, and that this therefore was not simply a temporary absence from Vermont. See In re A.W., 2014 VT 32, ¶ 21 (rejecting argument that parent's time spent in Vermont was merely a "temporary absence" from New York where parent brought child to Vermont with specific intent to reside there, and took additional, affirmative steps to establish residency in Vermont, including applying for welfare benefits and agreeing to follow safety plan). Instead, the court found that it was a formal and at that time bona fide move to relocate to Virginia and that mother intended to and did take up residence in Virginia. The court thus found that there was no home state, that there were significant ties and information and evidence available in Virginia with regard to the child's care and welfare going forward, and that Virginia had jurisdiction to decide the custody matter. Given the Virginia court's decision, the Vermont court made no objection on the record and dismissed the parentage action filed in Vermont.

¶ 13. Mother asked the Vermont court to reconsider its dismissal order, and the court denied her request. It rejected mother's assertion that the Vermont court must conduct its own analysis and make express findings of fact as to the child's home state pursuant to 15 V.S.A. § 1071(a). It found that this would contradict the primary purpose of the UCCJEA, which is to avoid a jurisdictional contest between states. The court explained that § 1071 applied only when "a Vermont court has jurisdiction to make an initial child custody determination." (Emphasis added.) Section 1073, the court explained, addressed the court's "[j]urisdiction to modify [a] determination." The court concluded that mother essentially was seeking a "modification" of the existing Virginia custody order by asking the court to change, replace, and/or supersede the Virginia district court order giving father custody. In short, the court found that § 1071 and § 1073

7

must be read together and § 1071 could not apply if an initial determination had already been made, which was the case here.[2]

¶ 14. The court also found it appropriate to dismiss the case without making specific findings of fact pursuant to § 1076(b), the simultaneous proceeding provision. It noted that this provision did not require the court to make formal findings of fact. The court thus concluded that it need not make specific findings of fact under a § 1071 analysis because it had determined that a Virginia court had held that it had continuing, exclusive jurisdiction. The court thus declined to reconsider its decision dismissing the Vermont case. This appeal followed.

## III. Arguments on Appeal

¶ 15. On appeal, mother appears to reassert her position that a § 1071 analysis is required. She argues that Vermont is the child's "home state," and that her move to Virginia was a "temporary absence," which did not undermine Vermont's status as the child's home state. In making these arguments, she wars with the Virginia court's findings of fact and that court's conclusion. Mother also asserts that the Virginia court erred in concluding that the child and at least one parent had a significant connection with the Commonwealth of Virginia. Mother maintains that given the child's tenuous connection to Virginia, the Vermont court erred in finding that Virginia substantially conformed to the UCCJEA. Additionally, mother asserts that the court erred in considering her parentage action as seeking a "modification" of an existing order, rather than analyzing the case under the "simultaneous proceedings" provision in § 1076. Finally, mother

---

[2] The court also concluded that because § 1073 applied, § 1076(c) applied as well. This provision does not appear applicable as, according to the UCCJEA Editor's Notes, it "concerns the problem of simultaneous proceedings in the State with modification jurisdiction and enforcement proceedings under Article 3." UCCJEA Editor's Notes § 206. This case does not involve simultaneous modification and enforcement proceedings, so this provision does not apply. The court's decision did not turn on its analysis of § 1076(c), and any error arising from the court's reference to this section is harmless.

8

argues that the Virginia court and the Vermont court should not have deliberated off-the-record at the close of the joint hearing.

¶ 16. We review the court's jurisdictional ruling under the UCCJEA de novo, and "[a]ny factual findings by the court underlying its ruling are reviewed for clear error." In re A.W., 2014 VT 32, ¶ 17. We conclude that dismissal of the Vermont parentage action was appropriate here. Virginia, where the proceedings first commenced, determined that the child had no "home state" and that "the child and the child's parents, or the child and at least one parent or a person acting as a parent, had a significant connection with the Commonwealth other than mere physical presence; and substantial evidence is available in the Commonwealth concerning the child's care, protection, training, and personal relationships." Va. Code Ann. § 20-146.12; see also 15 V.S.A. § 1071(a)(2) (providing similar definition with respect to "[i]nitial child custody jurisdiction"). Because mother had also initiated a proceeding in Vermont, the Vermont court consulted with the Virginia court, and implicitly found that Virginia had assumed jurisdiction consistent with the UCCJEA. While the Vermont court should have made express findings to support its conclusion that Virginia had assumed jurisdiction consistent with the UCCJEA, the record here amply supports the court's decision. The proceedings unfolded as contemplated by the UCCJEA.

¶ 17. At the time mother filed her Vermont action, there was an action already pending in Virginia. The UCCJEA makes clear, with an exception not relevant here, that a Vermont court cannot exercise its jurisdiction if "a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter." Id. § 1076(a) (emphasis added). Father commenced proceedings in Virginia on August 10, 2016, by filing his custody action. See id. § 1061(5) (defining "commencement" as "the filing of the first pleading in a proceeding"). This carries out the "first-in-time" rule embodied in the simultaneous proceedings provision, 15 V.S.A. § 1076. This rule, which prohibits a state from exercising jurisdiction if a custody action is pending in another state, is "designed to prevent

9

jurisdictional squabbles by limiting the court's jurisdiction to act in certain custody matters." In re C.A.D., 839 P.2d 165, 172 (Okla. 1992). As a California court explained, the law requires:

> that where . . . [for example,] a California court is presented with a child custody proceeding and is informed that a court of another state already may have exercised jurisdiction, the proper inquiry is not whether California could exercise jurisdiction, but whether the first-in-time court's exercise of jurisdiction was in accordance with the UCCJA . . . and the [Parental Kidnapping Prevention Act], and whether that court continues to exercise jurisdiction.

In re Marriage of Zierenberg, 16 Cal. Rptr. 2d 238, 241-42 (Ct. App. 1992) (emphasis added). As previously noted, the UCCJEA carries forward the "first-in-time" rule under the prior law.

¶ 18. We reach the same conclusion here. Because a proceeding had been commenced in Virginia, the Vermont court first needed to determine "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child ha[d] been commenced in a court of another state having jurisdiction substantially in conformity with this chapter." 15 V.S.A. § 1076(a).[3]

¶ 19. As set forth above, the Virginia court assumed jurisdiction initially as the child's "home state." After a de novo review, it retained jurisdiction on a different basis, concluding that: (1) the child had no home state and that the child and father had a significant connection with Virginia other than mere physical presence; and (2) substantial evidence was available in Virginia concerning the child's care, protection, training, and personal relationships. See Va. Code Ann. § 20-146.12; see also 15 V.S.A. § 1071(a)(2) (similar provision). The Virginia court made numerous findings in support of its decision.

---

[3] While the court erroneously considered mother's filing as an attempt to modify Virginia's decision to award custody to father, the error was harmless. The court's ultimate conclusions—that it was not required to conduct a § 1071 analysis to determine if it had "jurisdiction to make an initial child custody determination," and that it lacked jurisdiction to adjudicate the child's custody—are true whether mother's filing was construed under the modification provision, or, correctly, under the simultaneous proceeding provision. The court considered both statutory provisions in reaching its decision.

¶ 20. Because this fell within the "simultaneous proceedings" provision of the UCCJEA, the Vermont court should have made express findings and an express conclusion that a child custody proceeding had "been commenced in a court in another state having jurisdiction substantially in accordance with this chapter." 15 V.S.A. § 1076(b). Indeed, father submitted proposed findings and conclusions to this effect with the court. But the court declined to make any findings on this issue. Nonetheless, we find the error harmless here. It is evident that the Vermont court concluded that Virginia assumed jurisdiction substantially in conformance with the UCCJEA, particularly given that it participated in the Virginia hearing, conferred with the Virginia court, and it was present for the Virginia court's findings as to basis for the exercise of its jurisdiction under the UCCJEA. Had it concluded otherwise, it would not have dismissed the case. See id. (stating that Vermont must dismiss its proceeding unless "the court of the state having jurisdiction substantially in accordance with this chapter" determines "that the Vermont court is a more appropriate forum").

¶ 21. Moreover, the record evidence overwhelmingly supports the trial court's conclusion that the Virginia court assumed jurisdiction substantially in conformance with the UCCJEA. See In re C.A.D., 839 P.2d at 172 (to determine if out-of-state court was exercising jurisdiction substantially in conformance with UCCJA, court reviewed allegations made in out-of-state custody proceeding). Indeed, the Virginia court's ultimate assumption of jurisdiction is consistent with our own case law. See, e.g., In re A.W., 2014 VT 32, ¶ 21 (concluding that child had no "home state" where child had lived in New York and Vermont, but that Vermont would assume jurisdiction where parent brought child to Vermont with specific intent to reside there, and took additional, affirmative steps to establish residency in Vermont, including applying for welfare benefits and agreeing to follow safety plan, demonstrating that Vermont's ties to matter were sufficient to exercise jurisdiction).

11

¶ 22.    Mother does not deny that when she relocated to Virginia with the child, she intended for them to reside there indefinitely.  She does not dispute that she signed a one-year lease for an apartment where she planned to live with the child, transferred one job and took a second job, and otherwise relocated her and the child's lives to Virginia.  Although she and the child only lived in Virginia for about two weeks before father commenced the Virginia proceeding, the child had only lived in Vermont for about six weeks before that.  During much of that time, mother was planning their move to Virginia.  Given this uncontroverted evidence, the trial court could not have concluded that the Virginia court unreasonably determined that the child's time in Virginia was not a mere temporary absence from Vermont and that the child had no home state.

¶ 23.    Likewise, the record clearly supports the trial court's implicit conclusion, based on this evidence, that the Virginia court reasonably asserted "significant connection" jurisdiction. Virginia was not required, as argued by mother, to find that it had the most significant connection to assume jurisdiction; rather, the plain language of the statute requires that it find only that "the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence."  Va. Code Ann. § 20-146.12 (emphasis added); see also 15 V.S.A. § 1071(a)(2)(A) (similar provision). The evidence, recited above, supports that conclusion here.  See In re A.W., 2014 VT 32, ¶ 23 (reviewing whether "there [were] sufficient family connections and evidence" to support Vermont's assumption of jurisdiction under UCCJEA as state having a "significant connection" to child and parent).

¶ 24.    Mother cites Rocissono v. Spykes, 170 Vt. 309, 749 A.2d 592 (2000), asserting that we should consider, as in that case, whether the Virginia court's decision is entitled to full faith and credit.  Rocissono involved the enforcement of another state's custody order, covered by a separate provision in the law that explicitly references full faith and credit.  It does not control our analysis here because mother was not seeking to enforce an out-of-state order.  Cf. 15 V.S.A.

12

§ 1092(a) ("A Vermont court shall accord full faith and credit to an order issued by another state and consistent with this chapter which enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under subchapter 2 of this chapter."). The court engaged in the appropriate analysis here.

¶ 25. Finally, we reject mother's assertion that the trial court committed reversible error by conferring off the record with the Virginia court after the presentation of evidence and argument. Mother relies on 15 V.S.A. § 1068(b) and (d), which require that communications between courts on matters other than scheduling and similar matters may include the parties and must be on the record. Mother asserts that this conversation must be classified as substantive, and it was improper because each judge was required to make an independent determination based upon the facts.

¶ 26. The trial court's conference with the Virginia court out of the presence of the parties, after they had the opportunity to present facts and legal arguments, was consistent with the requirements of 15 V.S.A. § 1068(a) and (b) (providing that "Vermont court may communicate with a court in another state concerning a proceeding arising under this chapter," and it "may allow the parties to participate in the communication;" "[i]f the parties are not able to participate in the communication, they shall be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made"). Although the Vermont court was ultimately required to make its own independent determination as to whether the Virginia court's assertion of jurisdiction substantially complied with the UCCJEA, the statute expressly contemplates the possibility that courts may communicate outside the presence of the parties.

¶ 27. The court's failure to preserve the communications on the record, on the other hand, may be error. See 15 V.S.A. § 1068(d) (providing that except as to communications between courts concerning schedules, calendars, and similar matters, record shall be made of communication between courts and parties shall be notified of and granted access to record). The

13

decision to deliberate off-the-record deprives this Court of any opportunity to review the deliberation process. Mother, however, failed to preserve her objection to the trial court's failure to record its communications with the Virginia court. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Father's counsel suggested after the close of evidence that the judges jointly confer off the record before issuing their respective decisions. Mother did not object. Had mother timely objected, the trial court would have had an opportunity to correct its proposed process. See, e.g., In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504 ("The purpose of the [preservation] rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review." (quotation omitted)). It is evident, moreover, that the parties were "given the opportunity to present facts and legal arguments before a decision on jurisdiction [was] made." 15 V.S.A. § 1068(b).

Affirmed.

FOR THE COURT:

Associate Justice