NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 104

No. 2020-055

| | |
|---|---|
| W.H. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Department for Children and Families | September Term, 2020 |

Katherine A. Hayes, J.

Sarah Star of Sarah R. Star, P.C., Middlebury, for Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney General, Waterbury, for Defendant-Appellee.

PRESENT:  Reiber, C.J., Robinson, Eaton and Cohen, JJ., and Howard, Supr. J. (Ret.), Specially Assigned

¶ 1.  **EATON, J.**  This case presents the question of whether Vermont must recognize and register an Alabama order granting plaintiff father, W.H., sole physical and legal custody of juvenile M.P., who currently resides in Vermont and is in the custody of the Vermont Department for Children and Families (DCF) pursuant to a Vermont court order.  The family division concluded that Alabama lacked jurisdiction to adjudicate matters related to M.P.'s custody and denied the registration request.  On appeal, plaintiff contends that Alabama had jurisdiction under the applicable state and federal laws and that Vermont was therefore obligated to recognize and register the Alabama custody order.  We affirm.

## I. Legislative Backdrop

¶ 2.     The jurisdictional and enforcement issues in this appeal involve the standards established by, and the interaction between, two legislative enactments. The first is the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 15 V.S.A. §§ 1061-1096, which is a uniform law enacted to "avoid a jurisdictional contest between states" regarding child-custody matters. Pierce v. Slate, 2017 VT 63, ¶ 13, 205 Vt. 159, 172 A.3d 190. It has been adopted by forty-nine states plus the District of Columbia and the Virgin Islands. UCCJEA References & Annot., Editor's notes, U.L.A. The exercise of jurisdiction by Vermont under the UCCJEA is based primarily on home-state jurisdiction, defined broadly as the state where the child has lived with a parent for six months. In re M.S., 2017 VT 80, ¶ 6, 205 Vt. 429, 176 A.3d 1124; see 15 V.S.A. § 1071(a)(1). The UCCJEA also, however, allows Vermont to exercise temporary emergency jurisdiction if a child is present in Vermont and is abandoned or needs protection. 15 V.S.A. § 1074(a). If emergency jurisdiction is exercised and no child-custody determination is commenced in a state having jurisdiction, the child-custody determination becomes final and Vermont becomes the child's home state. Id. § 1074(b).

¶ 3.     The other important legislation is a federal law entitled the Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A, which requires state courts to give full faith and credit to the custody determinations of other states. The PKPA was enacted in response to children being kidnapped by parents and brought across state lines, and its purpose "was to provide for nationwide enforcement of custody orders." Thompson v. Thompson, 484 U.S. 174, 181 (1988). The PKPA was designed to address the interstate custody jurisdictional problems that continued to exist after the adoption of the precursor to the UCCJEA, the Uniform Child Custody Jurisdiction Act (UCCJA). UCCJEA References & Annot., Prefatory Note, U.L.A. Like the UCCJEA, the PKPA prioritizes home-state jurisdiction and allows a court to exercise continuing jurisdiction. 28 U.S.C. § 1738A(c)(2). Under the continuing-jurisdiction provision, if a state makes an initial custody

2

determination, that state maintains its jurisdiction as long as it is not extinguished, and the child continues to reside in the state. Id. § 1738A(d). The PKPA also provides that once a state has asserted lawful jurisdiction and a proceeding is pending, another state may not exert jurisdiction, even if it could have exercised jurisdiction in the first place. Id. § 1738A(g); Thompson, 484 U.S at 177.

¶ 4. The adoption of the UCCJEA was intended to remedy an "inconsistency of interpretation of the UCCJA and the technicalities of applying the PKPA, [which] resulted in a loss of uniformity among the States." UCCJEA, Refs & Annos, U.L.A. To that end, the UCCJEA's provisions were designed to harmonize with those of the PKPA by prioritizing home-state jurisdiction, clarifying the parameters for exercising emergency jurisdiction, providing for continuing and exclusive jurisdiction, specifying the types of proceedings covered, and distinguishing between jurisdictional standards and substantive standards.

¶ 5. In this case, there are competing custody determinations by Vermont and Alabama. The question is whether Vermont must recognize and enforce an Alabama custody order pertaining to M.P., which was made several years after Vermont had initiated a child-welfare proceeding involving M.P. Plaintiff argues that Vermont's orders did not comply with the UCCJEA or the PKPA, Alabama exercised jurisdiction in accordance with the PKPA and the UCCJEA, and therefore Vermont must enforce the Alabama custody order. We conclude that Vermont exercised jurisdiction in accordance with the UCCJEA and the PKPA, the Vermont custody proceedings were pending when the Alabama action was filed, and that Alabama was precluded from exerting jurisdiction. Therefore, Vermont was not required to recognize or enforce Alabama's order under either the UCCJEA or the PKPA.

## II. Facts

¶ 6. The underlying facts of this case are set forth in detail in this Court's prior decision involving juvenile M.P. In re M.P., 2019 VT 69, __ Vt. __, 219 A.3d 1315. As described in that

case, juvenile M.P. was born in October 2015 in Alabama to mother and her husband, who was named as M.P.'s father on M.P.'s birth certificate. Mother and her husband also had two older children together. In the spring of 2016, M.P. moved with her family to Vermont.[1] Mother was subsequently arrested on an Alabama warrant and extradited back to Alabama, leaving M.P. and her older siblings in husband's care. In August 2016, husband requested state assistance in caring for the children and the court placed the children in DCF custody. In September 2016, when M.P. was almost one year old, DCF placed M.P. in a foster home in Vermont where she has lived since. In November 2016, based on the stipulation of husband as the custodial parent, the court found that M.P. and her siblings were children in need of care or supervision (CHINS).

¶ 7. The court issued a disposition order in January 2017 continuing DCF custody. The disposition case plan indicated that mother had named plaintiff in this case, W.H., as M.P.'s biological father. Following genetic testing, the court issued a proposed parentage order in June 2017 naming W.H. as M.P.'s legal parent. Plaintiff was then entered as a party in the CHINS case and granted representation by counsel. Plaintiff lived in Alabama and M.P. spent some time living with him and mother during the first few months of her life. Plaintiff did not know that mother was planning to take M.P. to Vermont. After the move to Vermont, plaintiff was unaware of the custody proceeding involving M.P. until a week after the emergency care order issued. Plaintiff attempted to communicate with DCF about M.P. but DCF would not provide him with information about the proceeding because he was not recognized as a legal parent and was not a party to the proceeding. See 33 V.S.A. § 5117(a) (providing that records in juvenile proceedings are not subject to public disclosure). After he was entered as a party to the case, plaintiff traveled to Vermont a few times and had some visits with M.P. Plaintiff participated in the juvenile

---

[1] Plaintiff's complaint in this case alleges that the move took place in May 2016. Because the court granted the State's motion to dismiss, we accept this fact as true for purposes of this decision.

4

proceeding and did not challenge Vermont's exercise of jurisdiction or authority to issue the January 2017 disposition order.

¶ 8. In February 2018, the State filed petitions to terminate parents' rights. Following a hearing, the family division granted the petition as to both parents. As to plaintiff, the family division found that there was a change of circumstances based on his lack of progress, citing the minimal number of visits between him and M.P. and the resultant lack of a bond or relationship between them. In re M.P., 2019 VT 69, ¶ 11. The court issued an order in February 2019, finding that termination was in M.P.'s best interests, particularly because plaintiff would not be able to parent M.P. within a reasonable period of time as measured from M.P.'s perspective. Id.

¶ 9. In March 2019, parents appealed the termination decision to this Court on several grounds, including that the family division lacked jurisdiction over the CHINS proceeding under the UCCJEA. This argument was raised for the first time on appeal. Id. ¶ 18. On September 17, 2019, this Court concluded that Vermont had temporary emergency jurisdiction under the UCCJEA when the CHINS petition was filed because M.P. was present in the state and state intervention was required to protect M.P. from harm or risk of harm. Id. ¶ 20; see 15 V.S.A. § 1074(a) (providing for temporary emergency jurisdiction). This Court further held that the emergency jurisdiction developed into permanent jurisdiction when no child-custody proceeding was commenced in a court of another state having jurisdiction for six months. In re M.P., 2019 VT 69, ¶¶ 21-22; see 15 V.S.A. § 1074(b). This Court held that at that point, Vermont became M.P.'s home state under the UCCJEA. In re M.P., 2019 VT 69, ¶ 21.

¶ 10. As to plaintiff's challenge to the termination order on the merits, this Court concluded that the family division erred in evaluating M.P.'s best interests because the family division inappropriately relied on plaintiff's stagnation, which was inapplicable in the absence of

5

a disposition order and case plan that applied to him. Id. ¶ 30. This Court remanded for a new hearing on whether termination of plaintiff's parental rights was in M.P.'s best interests. Id.[2]

¶ 11. Meanwhile, in May 2019, while the termination appeal was pending at this Court, plaintiff filed an action in Alabama seeking custody of M.P.[3] The Alabama court issued an order on September 20, 2019, declaring that Alabama had home-state jurisdiction and awarding "complete care, custody, and control" of M.P. to plaintiff, citing the initial-custody provision of Alabama's version of the UCCJEA. Ala. Code § 30-3B-201. The order did not provide any analysis describing the basis for exercising jurisdiction or address Vermont's orders concerning M.P. The Alabama judge did not contact the Vermont courts prior to issuing the custody order. Because of the limited record, this Court is unable to determine whether the Alabama judge was informed of the existing Vermont orders related to M.P. or the status of proceedings in Vermont.

¶ 12. In October 2019, plaintiff, represented by counsel, filed this action in the family division seeking to register and enforce the Alabama child-custody order. The State of Vermont opposed the request and moved to dismiss the action arguing that Vermont was M.P.'s home state, there were valid Vermont orders concerning M.P.'s custody, and the Alabama court lacked

---

[2] In our prior decision, we made the following statement: "Father was a noncustodial parent at the time of the commencement of this proceeding." In re M.P., 2019 VT 69, ¶ 37. In this appeal, plaintiff construes this single sentence as a holding that plaintiff had the legal status of a noncustodial parent at the time the CHINS proceeding was commenced and therefore was entitled to participate in the CHINS action from the outset. The sentence does not amount to a holding that plaintiff was a legally recognized parent when the CHINS proceeding began or that plaintiff was entitled to participate in the CHINS proceeding prior to being recognized as a parent. When read in context, the sentence simply reflects the type of relationship that plaintiff had with M.P. and makes no holding as to what plaintiff's legal status was at the time.

[3] The facts pertaining to the proceedings in Alabama are taken from plaintiff's complaint and attachments. Plaintiff did not provide the full record of the Alabama proceeding to the Vermont courts and it is not part of the record for this appeal. For example, there is no copy of the documents plaintiff filed with the Alabama court or a transcript of any hearing held there.

6

jurisdiction over custody proceedings relative to M.P.[4]  Following a hearing, the family division declined to register the Alabama order.  The court concluded that Alabama lacked jurisdiction to enter the custody order under the UCCJEA because Vermont proceedings concerning M.P.'s custody were pending and had not terminated.  The court further concluded that the PKPA applied to abuse-and-neglect proceedings and that Vermont had properly exercised jurisdiction pursuant to the statute.  The court denied plaintiff's subsequent motion to reconsider.  Plaintiff appeals that order, arguing that Alabama properly exercised jurisdiction and that its order must be registered in Vermont under the UCCJEA and the PKPA.

### III.  UCCJEA

¶ 13.    Under the UCCJEA, an order from another state concerning child custody will be registered and confirmed unless someone contesting the order establishes one of three things, including that "the issuing court did not have jurisdiction under [the UCCJEA]."  15 V.S.A. § 1085(d)(1).  Therefore, in this case, Vermont was not obligated to register and enforce the Alabama custody order if Alabama lacked jurisdiction under the UCCJEA to issue a custody order pertaining to M.P.  We review the family division's decision regarding jurisdiction under the UCCJEA de novo.  Pierce, 2017 VT 63, ¶ 16.  Because the court decided the issue in the context of a motion to dismiss, we accept as true the facts as pleaded in the complaint.  Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009.

¶ 14.    Under the UCCJEA, the exercise of initial jurisdiction is governed primarily by determining the child's home state,[5] and other states cannot assert jurisdiction unless the home

---

[4]  The State also argued that the order should not be registered because DCF had not been properly served in the Alabama proceeding.  See 15 V.S.A. § 1085(d)(3).  The trial court did not reach that question, concluding that there were insufficient facts to resolve the dispute.

[5]  The UCCJEA as adopted by Alabama and Vermont contain substantially the same provisions.  Alabama has jurisdiction to make "an initial child custody determination" if (1) it is the child's home state on the date the proceeding is commenced or was the home state within six months before and the child is absent with a parent living in the state, (2) no other state has home-

7

state declines. In re M.S., 2017 VT 80, ¶ 6; see 15 V.S.A. § 1071(a)(1). An initial custody determination is "the first child custody determination concerning a particular child." 15 V.S.A. § 1061(8). In addition, a court that properly exercises temporary emergency jurisdiction becomes a child's home state and thus has jurisdiction to make an initial child-custody determination if no child-custody proceeding is commenced in a court of a state having jurisdiction within six months. Id. § 1074(b); see In re M.P., 2019 VT 69, ¶ 21 (construing § 1074(b) to mean that if Vermont exercises emergency jurisdiction and child remains in state for six months without a child-custody proceeding being initiated in another state, Vermont becomes child's home state). Once a court properly asserts jurisdiction and makes an initial custody determination, it retains "exclusive, continuing jurisdiction over the determination" until the children and parents no longer reside in the state or no longer have a significant connection to the state. Ala. Code § 30-3B-202(a); 15 V.S.A. § 1072(a). Under the simultaneous-jurisdiction provision, other states cannot exercise jurisdiction "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with [the UCCJEA]" and it has not been terminated or stayed. Ala. Code § 30-3B-206(a); 15 V.S.A. § 1076(a).

A.

¶ 15. Vermont was not obligated to register the Alabama custody order because Alabama lacked jurisdiction under the UCCJEA pursuant to the simultaneous-jurisdiction provision. This "first-in-time" rule is an important part of the UCCJEA because it prevents "jurisdictional squabbles" between states. Pierce, 2017 VT 63, ¶ 17 (quotation omitted). When the Alabama suit was filed, a proceeding concerning custody of M.P. had already been commenced in Vermont,

---

state jurisdiction or has declined jurisdiction and there are significant connections to the state, (3) all courts with jurisdiction under (1) and (2) have declined jurisdiction, or (4) no court would have jurisdiction. Ala. Code § 30-3B-201(a); see 15 V.S.A. § 1071(a) (containing same standard).

Vermont's exercise of jurisdiction was "substantially in conformity" with the UCCJEA, and the Vermont proceeding had not been stayed or terminated.[6] Ala. Code § 30-3B-206(a); 15 V.S.A. § 1076(a).

¶ 16.   As to the first requirement, a child-custody proceeding had been commenced in Vermont. The child-welfare proceeding began when the CHINS petition was filed in August 2016 and continued when the petition to terminate parental rights was filed in February 2018. See 33 V.S.A. § 5309(a) (explaining that CHINS proceeding is initiated by filing of petition by state's attorney); id. § 5113(b) (providing that court can modify disposition order in child's best interest). Both qualify as a child-custody proceeding under the UCCJEA, which defines "child custody proceeding" to include dependency, neglect, and termination-of-parental-rights proceedings. Ala. Code § 30-3B-102(4) (defining "child custody proceeding" to include proceeding for "divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence"); 15 V.S.A. § 1061(4) (same).

¶ 17.   Further, Vermont exercised jurisdiction substantially in conformity with the terms of the UCCJEA. This Court has already concluded that Vermont had jurisdiction under the UCCJEA, both to make an initial emergency order and then, as M.P.'s home state, to make permanent orders. In re M.P., 2019 VT 69, ¶ 22. Under the UCCJEA, after a court exercises temporary emergency jurisdiction, the order becomes final and the state becomes a child's home state if custody proceedings are not commenced in another state within six months. 15 V.S.A. § 1074(b); see In re M.P., 2019 VT 69, ¶ 21 (explaining that Vermont becomes home state and

_____

[6] Alabama also did not have jurisdiction under the modification or emergency provisions of the UCCJEA. To exercise emergency jurisdiction, among other things, Alabama would have to demonstrate that M.P. was present in the state, and in 2019, M.P. continued to reside in Vermont. See Ala. Code § 30-3B-204(a). Alabama could modify a Vermont order only if it had jurisdiction and either Vermont determined it no longer had continuing exclusive jurisdiction or the child was no longer present in the state. Id. § 30-3B-203. This was not applicable because the child remained in Vermont and Vermont had not relinquished its jurisdiction.

order becomes final if court exercises temporary jurisdiction and no other state commences custody proceeding for six months). Although our decision in In re M.P. was not explicit on when the six-month period begins for obtaining permanent jurisdiction under § 1074(b), we clarify now that the six-month period starts when the child first begins living in Vermont. This interpretation accords with the UCCJEA's definition of home state, which focuses on the state where the child has lived. See 15 V.S.A. § 1061(7) (defining home state). It is also the interpretation reached by other courts. See, e.g., In re E.X.J., 662 S.E.2d 24, 29 (N.C. Ct. App. 2008) (explaining that by time termination petition was filed, temporary jurisdiction had become permanent under UCCJEA by focusing on time that children were "physically present" in state), aff'd, 672 S.E.2d 19 (N.C. 2009).

¶ 18. In this case, M.P. was born in Alabama in October 2015 and moved to Vermont with her legal parents in May 2016. M.P. has lived in Vermont ever since. As this Court concluded in In re M.P., Vermont became M.P.'s home state after Vermont exercised emergency jurisdiction, she lived in the state for six months, and no child-custody proceeding was commenced in another state. 2019 VT 69, ¶ 22. Therefore, as we previously held, by the time the petition to terminate parental rights was filed in February 2018, Vermont had home-state jurisdiction under the UCCJEA.

¶ 19. Finally, the proceedings in Vermont were not stayed or terminated. When the Alabama custody case was filed in May 2019, the proceedings in Vermont had not been terminated or stayed. The family division had granted the State's petition to terminate parents' rights and parents' appeal was pending in this Court. Moreover, while the appeal was pending, the family division retained jurisdiction to modify or enforce its orders. See V.R.A.P. 8(c) (providing that juvenile disposition order may be stayed pending appeal and that "superior court retains jurisdiction" to modify, vacate, or enforce its orders).

10

B.

¶ 20.    Plaintiff's arguments to the contrary are unavailing.  Plaintiff argues that Vermont did not possess exclusive, continuing jurisdiction because there was no valid "child custody determination" issued by Vermont.  See 15 V.S.A. § 1072(a) (providing that Vermont has "exclusive, continuing jurisdiction" once it makes a "child custody determination" consistent with initial or modification jurisdiction provisions of the UCCJA).  Plaintiff alleges infirmities in both the January 2017 disposition order and the February 2019 termination order that he contends render those orders inadequate to provide Vermont with exclusive and continuing jurisdiction.[7]  We need not reach any of these arguments because plaintiff's focus on the continuing-jurisdiction provision is misplaced.  The simultaneous-jurisdiction provision of the UCCJEA precludes a court from exercising jurisdiction if a proceeding "has been commenced in a court of another state having jurisdiction" under the UCCJEA.  Id. § 1076(a).  This bar on jurisdiction is not dependent on the existence of a child-custody determination.  As explained above, a proceeding had been commenced in Vermont and Vermont was exercising jurisdiction in conformance with the UCCJEA as M.P.'s home state.  Therefore, Alabama could not simultaneously exercise jurisdiction.

---

[7] Plaintiff's alleged infirmities in the now-final Vermont orders do not alter the fact that the orders are binding on him.  Under the UCCJEA, a child-custody determination made by a Vermont court "binds all persons who have been served in accordance with the Vermont laws or notified in accordance with section 1066 of this title or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard."  15 V.S.A. § 1064.  Plaintiff submitted to the jurisdiction of the Vermont court and was given an opportunity to be heard.  Plaintiff cannot now raise a collateral challenge to the validity of that proceeding after the decision has become final.  See In re C.P., 2012 VT 100, ¶ 28, 193 Vt. 29, 71 A.3d 1142 (explaining that allowing father to attack Vermont's exercise of jurisdiction when father knowingly submitted to Vermont's adjudication of matter and failed to challenge jurisdiction until after he was dissatisfied with result "would present a classic case of forum shopping" (quotation omitted)).

11

¶ 21. Plaintiff also attempts to avoid the bar on Alabama's jurisdiction by alleging that Alabama was M.P.'s home state. Plaintiff contends that M.P. lived in Alabama with her mother and mother's husband for the first six months of her life, making Alabama her home state, and that M.P.'s time in Vermont since then was merely a temporary absence from Alabama so Alabama remained her home state. We do not need to reach this question. Because Vermont properly exercised emergency jurisdiction over M.P. and that emergency jurisdiction became permanent in conformance with the UCCJEA, it is immaterial if Alabama at one point was M.P.'s home state. Proceedings in Vermont were ongoing in May 2019 and therefore Alabama was required to defer to Vermont and refrain from exercising jurisdiction. Ensuring that one state at a time exercises jurisdiction is a crucial part of the UCCJEA's purpose of avoiding contests between states. See Pierce, 2017 VT 63, ¶ 13 (explaining that "primary purpose of the UCCJEA . . . is to avoid a jurisdictional contest between states"); Ark. Dep't of Human Servs. v. Cox, 82 S.W.3d 806, 813 (Ark. 2002) ("One of the purposes of the UCCJEA is to avoid relitigation of child-custody determinations in other states.").

¶ 22. In sum, Alabama had no basis to assert jurisdiction over M.P. in May 2019 because a custody proceeding was pending in Vermont. See Pierce, 2017 VT 63, ¶ 17 (holding that where custody action was pending in another state Vermont court lacked jurisdiction under UCCJEA). Therefore, Alabama's custody order is ineffective, and Vermont is not required to register it. See 15 V.S.A. § 1085(d)(1).

## IV. PKPA

¶ 23. The PKPA requires states to enforce and not modify "any custody determination" made by another state. 28 U.S.C. § 1738A(a). The PKPA defines custody determination as "a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications." Id. § 1338A(b)(3). As the

U.S. Supreme Court has explained, the PKPA is concerned primarily with uniformity in enforcement; it does not grant or withhold jurisdiction. Thompson, 484 U.S. at 181 (explaining that purpose of PKPA was to provide "nationwide enforcement of custody orders"). The PKPA is concerned with "the enforceability of one state's custody order in another state and the other state's power to modify that order; it does not purport to control the jurisdiction to issue an initial order." Columb v. Columb, 161 Vt. 103, 108, 633 A.2d 689, 692 (1993). When the PKPA and state law conflict, the PKPA takes precedence. Shute v. Shute, 158 Vt. 242, 246, 607 A.2d 890, 893 (1992).

¶ 24. Plaintiff argues that even if Vermont's exercise of jurisdiction was consistent with the UCCJEA, Vermont did not comply with the PKPA and therefore Alabama was not required to recognize Vermont's orders. Plaintiff's framing of the issue on appeal is incorrect. Plaintiff's arguments focus on whether Alabama was required to give full faith and credit to Vermont's orders. That is not, however, the question in this appeal. The question here is the inverse, whether Vermont was required to give full faith and credit to Alabama's custody order under the PKPA. The State argues that we do not need to address this question because the PKPA does not apply to child-welfare proceedings. There is a split among states that have addressed the applicability of the PKPA to dependency and neglect proceedings. See In re Higera N., 2010 ME 77, ¶ 15, 2 A.3d 265 (recognizing two lines of cases and citing cases). We do not reach the question because, even assuming that the PKPA applies, we conclude that the PKPA does not require Vermont to recognize Alabama's custody order. See In re D.T., 170 Vt. 148, 152 n.1, 743 A.2d 1077, 1081 n.1 (1999) (declining to address whether the PKPA applies to dependency and neglect proceedings).

## A.

¶ 25. Like the UCCJEA, the PKPA seeks to avoid states simultaneously exercising jurisdiction over the same child. To that end, the PKPA precludes states from exercising

jurisdiction "in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section." 28 U.S.C. § 1738A(g). For a Vermont court to exercise jurisdiction consistent with the PKPA, it must have jurisdiction under Vermont law and one of several enumerated conditions must be met, including that Vermont was the child's home state when the proceeding was commenced or the court had continuing jurisdiction. Id. § 1738A(c)(2)(A), (E); see Miller-Jenkins v. Miller-Jenkins, 2006 VT 78, ¶ 13, 180 Vt. 441, 912 A.2d 951 (describing prerequisites to Vermont's exercise of jurisdiction consistent with PKPA).

¶ 26. Here, Vermont had continuing jurisdiction, which occurs after a state has made a custody determination and the child remains a resident of the state. 28 U.S.C. § 1738A(d). Under the PKPA, "custody determination" is defined to include temporary orders. Id. § 1738A(b)(3). The PKPA does not differentiate between jurisdiction to issue temporary or permanent orders. Plaintiff concedes that Vermont had jurisdiction to exert emergency jurisdiction over M.P. and to make an initial temporary order concerning her custody at the outset of the CHINS proceeding. See id. § 1738A(c)(2)(C) (allowing state to make a custody order if child is physically present in state and "it is necessary in an emergency to protect the child because the child . . . has been subjected to or threatened with mistreatment or abuse"). This order sufficed as a custody determination under the PKPA. Once Vermont made that initial emergency order and M.P. continued to reside in the state, Vermont had continuing jurisdiction under the PKPA and Alabama did not have authority to exercise jurisdiction while the Vermont custody proceeding was pending. See id. § 1738A(g) (precluding exercise of jurisdiction where custody proceeding is pending in another state).

14

¶ 27.    Plaintiff asserts that Vermont was not acting consistently with the PKPA and therefore the bar on Alabama exercising jurisdiction in § 1738A(g) did not apply because: (1) Vermont did not meet the PKPA's definition of home state; and (2) Vermont did not provide proper notice to plaintiff.  We address these arguments in turn.[8]

¶ 28.    As to home state, the PKPA defines home state as the state where the child lived for at least six months with a parent or person acting as a parent.  Id. § 1738A(b)(4).  Plaintiff argues that Vermont could not be M.P.'s home state because M.P. did not live in Vermont with a parent or person acting as a parent for six months.  "[P]erson acting as a parent" is defined as someone who has physical custody of a child and has either been awarded custody or claims a right to custody.[9]  Id. § 1738A(b)(6).  We need not address this question because, as explained above, Vermont's exercise of jurisdiction was not grounded on it being the child's home state when the proceeding began.

¶ 29.    Next, plaintiff claims that Vermont was not acting in conformance with the PKPA because plaintiff was not provided notice of the January 2017 disposition order as required by the PKPA.  28 U.S.C. § 1738A(e).  The issue in this appeal, however, is not the enforceability of Vermont's orders but whether Vermont is obligated to enforce Alabama's order.  See Miller-Jenkins, 2006 VT 78, ¶ 19 (explaining that "[w]hether Virginia must enforce the Vermont visitation order is not directly involved in this appeal, but that is an entirely different question from whether full faith and credit requires the Vermont court to strike its own visitation order because the Virginia court refuses to recognize its validity based entirely on Virginia law").  The

---

[8]  We have already rejected plaintiff's argument that an emergency care order was not sufficient to grant Vermont continuing jurisdiction under § 1738A(d).

[9]  The definition of "person acting as a parent" in the PKPA is similar to that in the UCCJEA, which defines it as a person with "physical care and supervision of a child."  Ala. Code § 30-3B-102(13), (14); 15 V.S.A. § 1061(13), (14).

enforceability of Alabama's order is dependent on whether Alabama properly exercised jurisdiction and, under the PKPA, it could not while there was a child-custody proceeding pending in Vermont. This bar was not dependent on whether there was a valid custody determination issued in the Vermont proceeding.

¶ 30. The Alabama Supreme Court addressed this issue in a case where a prospective adoptive couple argued that a Nebraska custody order was not enforceable against them because they did not have proper notice of the Nebraska proceedings. Ex Parte D.B., 975 So. 2d 940 (Ala. 2007). The court emphasized that any lack of notice did not invalidate the Nebraska child-custody proceeding itself and that the notice issue was not relevant to the PKPA's bar on concurrent proceedings, which precluded Alabama from exercising jurisdiction while proceedings were pending in Nebraska. The court explained as follows:

> The prohibition in § 1738A(g) is a prohibition on concurrent proceedings. Accordingly, for § 1738A(g) to apply as a bar to concurrent proceedings, there does not have to exist a child-custody determination that satisfies the PKPA's notice requirement stated in § 1738A(e)—that is, the prohibition stated in § 1738A(g) could apply when there has been no child-custody determination in the first state.

Id. at 955.

¶ 31. Likewise, the enforceability of Vermont's orders is not at issue and does not change Alabama's obligation to refrain from exercising jurisdiction while proceedings were pending in Vermont. As long as a custody proceeding was pending in Vermont, Alabama was barred from exercising jurisdiction under the PKPA. See In re Ramirez v. Barnet, 384 P.3d 828, 835 (Ariz. Ct. App. 2016) (holding that "the jurisdictional bar imposed by 28 U.S.C.A. § 1738A(g) applies when a proceeding is pending in the first state and the petitioner in that proceeding is asking the court to enter a custody or visitation determination," and citing cases).

¶ 32. In a related argument, plaintiff also asserts that the Vermont proceeding was not pending at the time the Alabama custody case was initiated and therefore Alabama was not

16

precluded from exercising jurisdiction. The PKPA does not contain a definition for "pending" and courts look to the law of the state where the action is brought to determine if it is commenced or pending. See In re B.B.R., 566 A.2d 1032, 1040 n. 25 (D.C. 1989) (explaining that to determine if action is pending, courts look to law of state where initial action is allegedly pending). As explained above, under Vermont law, the termination proceeding was pending because a notice of appeal had been filed, and the underlying juvenile matter remained active while the termination decision was on appeal.

¶ 33. For the foregoing reasons, Vermont is not required to recognize or enforce Alabama's custody order regarding M.P. under the PKPA.

Affirmed.

FOR THE COURT:

Associate Justice

17